IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Joseph Pellegrino, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ) <br> ) <br> United Parcel Service, Inc., ) <br> ) <br> Respondents. ) <br> ) | Civil Action No. 7:08-180-RBH-BHH <br><br> **<u>REPORT AND RECOMMENDATION</u>** <br> **<u>OF MAGISTRATE JUDGE</u>** |

This matter is before the Court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 [Doc. 59]. In his Complaint, the plaintiff alleges that the defendant terminated his employment for the exercise of his rights under the Family Medical Leave Act ("FMLA") of 1993, 29 U.S.C. § 2601 *et seq*. The plaintiff has pled both a claim for interference with his FMLA rights and retaliation for his exercise thereof.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration. non-sequitur

## **<u>FACTUAL BACKGROUND</u>**

The defendant is in the international small-package delivery business. (Cochran Decl. ¶ 2.) The plaintiff was hired by the defendant in July 2004 as a loader/unloader in the defendant's Spartanburg hub. (Pl. Dep. at 43-44.) Thereafter, he held a variety of positions and ultimately became a full-time supervisor in the Spartanburg hub in July 2007. (Pl. Dep. at 43-45, 47.) The plaintiff held this position from July 2007 until his employment was terminated on December 12, 2007. (Cochran Decl. ¶ 4; see also Pl. Dep. at 47, 131-35.)

The defendant's "peak season" runs from Thanksgiving through Christmas each year. (Pl. Dep. at 44.) The defendant's management employees are required to work more hours during peak season than during other times of the year. (Cochran Decl. ¶ 5.) Jim Cochran, Hub and Feeder Division Manager, decided that it was necessary for the Spartanburg hub to add a Sunday afternoon mail "sort" to its weekly peak season schedule in order to effectively accommodate the additional volume of packages anticipated. (Cochran Decl. ¶ 8; Yarrell Decl. ¶ 3.) In mid-November 2007, prior to the start of peak season, Yarrell informed the plaintiff and other full-time supervisors at the hub that it might be necessary for all of them to work Sundays during peak season. (Pl. Dep. at 51-52, 181). Full-time supervisors, such as the plaintiff, were instructed to report to work around 2:00 p.m., approximately 2 hours prior to the start of the sort. (Yarrell Decl. ¶ 5.)

As will be discussed in greater detail below, the plaintiff failed to show for work on three consecutive Sundays. (Pl. Dep. at 57, 95, 129, 139.) The plaintiff's wife also worked on Sundays, and the plaintiff needed to stay home to care for his children, including his five-month-old daughter. (Pl. Dep. at 10-11, 52-53.) After his second unexcused absence, the plaintiff inquired about intermittent FMLA with the defendant's human resources department. (Pl. Dep. at 119.) He was given relevant paperwork but instructed that he was expected to work, as scheduled, the coming Sunday, December 9. (Pl. Dep. at 122-23, 139.) The plaintiff neither turned in any FMLA paperwork nor showed for work on Sunday. (Pl. Dep. at 129, 133, 135, 139.)

As a result of his third unexcused absence, the plaintiff's employment was terminated on December 12, 2007. (Pl. Dep. at 131-35; Cochran Dep. at 33.)

**APPLICABLE LAW**

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the

3

granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**I.  Interference Claim**

Claims of alleged violations of an employee's prescriptive rights under the FMLA – known as "interference" or "entitlement" claims – arise under 29 U.S.C.A. § 2615(a)(1). That Section states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." *Id*. The plaintiff alleges that the defendant interfered with his right to take intermittent leave on Sundays to care for his five month old child, while his wife worked.[1]

To state a claim for FMLA interference, an employee must prove that his employer: (1) interfered with the exercise of his FMLA rights; and (2) that such interference caused

---

[1] Qualified leave includes leave taken for the birth of a child, within the first 12 months of the child's birth. 29 U.S.C. § 2612(a)(1) & (2).

4

prejudice to the employee. *Reed v. Buckeye Fire Equip.*, 241 Fed. Appx. 917, 924 (4th Cir. 2007) (citing *Ragsdale v. Wolverine World Wide*, 535 U.S. 81, 87 (2002)); *Moticka v. Weck Closure Sys.*, 183 Fed. Appx. 343, 347 (4th Cir. 2006).

### A. Intermittent Leave

The defendant contends that the plaintiff cannot prevail on his interference claim because he had no entitlement to leave on an intermittent basis, without the defendant's consent, which was not given.

The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for . . . the birth of a son or daughter of the employee and in order to care for such son or daughter." 29 U.S.C. § 2612(a)(1)(A). The defendant rightly emphasizes, however, that leave for the birth of a child "shall not be taken by an employee ***intermittently*** or on a reduced leave schedule ***unless the employee and the employer . . . agree otherwise***." *Id*. at § 2612(b)(1) (emphasis added). The FMLA's interpretive regulations likewise provide that "[w]hen leave is taken after the birth or placement of a child for adoption or foster care, an employee may take leave intermittently or on a reduced leave schedule ***only if the employer agrees***." 29 C.F.R. § 825.203 (emphasis added); *see also Dotson v. Pfizer, Inc.*, 558 F.3d 284, 293-94 (4th Cir. 2009).

It is undisputed that the defendant did not agree to give the plaintiff intermittent leave. (Pl. Dep. at 151-52.) Really, to be more precise, the plaintiff never actually asked for intermittent leave such that the defendant could even have had the opportunity to agree to it. *Id*. The plaintiff never turned in any FMLA paperwork. *Id*. at 152. So the claim must fail for lack of the defendant's consent. *See* 29 C.F.R. § 825.203.

The plaintiff's only response to these facts is that when he inquired with Frank Morris, a human resources supervisor, about intermittent leave, Morris indicated that the defendant

5

provided intermittent leave. (Pl. Dep. at 119-20.) By extension, the plaintiff means to now argue that the defendant, in Morris' remark, *agreed* to his request for intermittent leave. Of course, evidence that the defendant grants, generally, or may have granted on some other occasion, intermittent leave, is not the same thing as evidence that it actually agreed to grant it to the plaintiff, specifically. It is undisputed that it did not. In fact, the defendant willingly concedes that Morris told the plaintiff that the defendant had granted intermittent FMLA leave in the past. (Morris Dep. at 29.) That concession, however, was not a legal agreement to grant it to the plaintiff, here. And, the record demonstrates that the plaintiff was so apprised.

First, Morris instructed the plaintiff that he needed to fill out the paperwork and that "we'll go from there." *Id*. There was no promise of, or agreement to, intermittent leave express or implicit in Morris' remarks. Second and more fundamentally, the plaintiff knew plainly that he was expected to report to work on the following Sunday, December, 9, and that a failure to do so might result in termination of his employment. (Pl. Dep. at 122-23, 139.)

As discussed, the plaintiff had failed to show for work the prior two Sundays, in the face of specific orders to the contrary. (Pl. Dep. at 56, 65, 95.) The Court would confess that, aside from being a qualified basis for leave, the plaintiff's need was of the highest kind – family and childcare. His wife's work schedule made it impossible for her to watch the children on Sundays. (Pl. Dep. 52-53.) But, the legal problem with the plaintiff's claim is not the moral dimension of his excuse. Instead, it was his unreasonable disregard for his employer's expectations as he attempted to fulfill those otherwise respectable responsibilities as father and husband.

In mid-November 2007, prior to the start of the defendant's peak season, Emanuel Yarrell, the plaintiff's direct supervisor, informed the plaintiff and other full-time supervisors

that it might be necessary for all of them to work Sundays during peak season. (Pl. Dep. at 51-52, 181.) The plaintiff told Yarrell that he could not work on Sundays because his wife worked Sundays and, therefore, was not available to stay with his children. (Pl. Dep. at 52-53; Yarrell Dep. at 20-21.) Yarrell told the plaintiff to talk to his wife and see whether they could find a family member or babysitter to help them out. (Pl. Dep. at 20-21). The plaintiff admits that he has a large extended family living close by, including his parents and several siblings. (Pl. Dep. at 11-12.)

The plaintiff later learned that he was scheduled to work on Sunday, November 25. (Pl. Dep. at 53-55.) Once again, he told Yarrell that he could not work on Sundays because of his wife's work schedule. (Pl. Dep. at 54-55; Yarrell Dep. at 21.) In response, Yarrell tried to work out an arrangement with the plaintiff. (Pl. Dep. at 56; Yarrell Dep. at 21-22.) Specifically, Yarrell told the plaintiff to report to work after his wife returned home that Sunday. (Pl. Dep. at 56, 58, 65-66; Yarrell Dep. at 21-22.) The plaintiff indicated that his wife typically returned home around 8:00 p.m. and agreed that he would report to work that Sunday around that time. (Pl. Dep. at 56, 58, 59-60, 65-66.)

On Sunday, November 25, the plaintiff's wife called him from work and told him that she had a mandatory staff meeting at the end of her shift and would, therefore, be home later than expected. (Pl. Dep. at 56, 65). Notwithstanding, the plaintiff did not contact Yarrell or anyone else at UPS to let them know that he would not be in at the time he had agreed to report. (Pl. Dep. at 56, 65). The plaintiff did not report to work that Sunday night. (Pl. Dep. at 57). The plaintiff contends that another supervisor, Jordan Lawter, called him at 9:30 p.m. to tell him that all the work was done; to confirm that the plaintiff had not reported to work; and to tell him not to come in. *Id*. at 56-57. Whatever the exact story, it is undisputed that the plaintiff did not show for work nor made any effort of his own to contact the defendant.

7

The next day, Yarrell expressed his frustration with the plaintiff, which the plaintiff has characterized as "understandable." *Id*. at 68. The plaintiff was required to prepare a "write-up" of the incident. *Id*. at 70. After the plaintiff informed Yarrell of his refusal to perform any work on Sunday, he was called in to a second counseling meeting with Jim Cochran, the Hub and Feeder Division Manager, and Yarrell to discuss the issue further. (Pl. Dep. at 74; Yarrell Dep. at 28-29; Cochran Dep. at 18-19). Cochran told the plaintiff that he needed to make other arrangements such as finding a family member or a babysitter to watch his children for the few hours that his Sunday work schedule overlapped with his wife's work schedule. (Pl. Dep. at 75-76.) The plaintiff admits that Cochran specifically warned him that if he did not report to work the following Sunday as scheduled, his employment was subject to termination. (Pl. Dep. at 75.)

Notwithstanding, the plaintiff did not report to work as required. (Pl. Dep. at 95.) Instead of terminating the plaintiff, however, the defendant decided that he would give the plaintiff another chance. (Cochran Decl. ¶ 11.) The plaintiff's final counseling session occurred on Tuesday, December 4. (Pl. Dep. at 98-112; Cochran Dep. at 25-26.) The plaintiff was again told that he needed to make arrangements to be at work on peak Sundays. (Pl. Dep. at 102; Cochran Dep. at 25-26; Morris Dep. at 21.) Before the meeting ended, the plaintiff was told that if he failed to report to work the following Sunday, his employment would be terminated. (Pl. Dep. at 101, 110 & Exh. 6; Cochran Dep. at 28; Morris Dep. at 22.)

It was after this final counseling session that the plaintiff approached Morris about intermittent leave. (Pl. at 119.) So by the time the plaintiff finally approached the defendant about intermittent leave, he had already failed to show to work twice and under such circumstances as would have justified the termination of his employment.

On the following Sunday, December 9, the plaintiff again failed to report to work. (Pl. Dep. at 129, 139.) A few days after this third unexcused absence, Cochran and Morris met with the plaintiff and told him that his employment was being terminated because of his failure to report to work as directed. (Pl. Dep. at 131-35; Cochran Dep. at 33.)

The Court greatly empathizes with the plaintiff's dilemma and would otherwise hope that the defendant would always be inclined to accommodate such needs. But, the plaintiff cannot simply decline to show for work three consecutive Sunday's, without prior permission, and then expect the Court to find the that it was the defendant who acted improperly. As discussed, by any measure, the plaintiff could have been reasonably terminated prior to ever having asked for intermittent leave. Even still, the plaintiff failed to ever complete his request for intermittent leave, which was never agreed to by the defendant.

While sympathetic, the Court cannot see how the plaintiff's claim is meritorious. No issues of fact remain as to any claim for interference with the plaintiff's request for intermittent leave. The defendant never agreed to grant it. No reasonable jury could conclude differently.

### B. Lump Sum Leave

The plaintiff also contends that the defendant interfered with his FMLA rights by not unilaterally offering lump sum leave in lieu of intermittent leave. In order to benefit from the protections of the FMLA, an employee must provide his employer with enough information to show that he may need covered FMLA leave. 29 U.S.C. § 2612(a)(1)(D), (E); 29 C.F.R. § 825.302(c) (2008); 29 C.F.R. § 825.303(b) (2008); *Rodriguez v. Smithfield Packing Co., Inc.*, 545 F. Supp. 2d 508, 515 (D. Md. 2008) ("The core requirements for triggering an employer's obligations [under the FMLA] are [a covered reason for leave] and adequate communication, meaning a timely communication sufficient to put an employer on notice

9

that the protections of the Act may apply."). Although the employee need not specifically mention the FMLA in requesting leave, he must provide enough information to suggest that his need for leave is for a covered purpose and must provide notice of the anticipated duration of the leave. *Peeples v. Coastal Office Products, Inc.*, 64 Fed. Appx. 860, 863 (4th Cir. 2003) ("Although an employee need not specifically mention the FMLA in requesting leave, employers 'are entitled to the sort of notice that will inform them not only that the FMLA may apply but also when a given employee will return to work.'") (quoting Collins v. NTN-Bower Corp., 272 F.3d 1006, 1008 (7th Cir. 2001)). When timely and adequate communication is not given, the protections of the Act do not apply, even if the employee in fact seeks leave for a qualifying purpose. *Collins*, 272 F.3d at 1008; *Rodriguez*, 545 F. Supp. 2d at 516.

The Court has diligently looked, without success, for some authority addressing the defendant's obligations to offer lump-sum or "block" leave where the employee has only and specifically asked for intermittent leave, as here. The plaintiff has offered none. The plaintiff requested accommodation of one scheduling conflict for a few hours on Sunday. The Court knows of no case, which would put the onus on the defendant to view that request as one which implicates a required offer of lump sum leave. Other courts have denied interference claims where the plaintiff requested intermittent leave but the employer expressly rejected the request; those decisions do not remark that lump sum leave should have been offered in the alternative. *See Maynard v. Town of Monterey, Tenn.*, 75 Fed. Appx. 491, 493 (6th Cir.2003); *Beyst v. Pinnacle Airlines, Inc.*, 2008 WL 2433201 at *7-8 (E.D. Mich., June 11, 2008). In the absence of authority to the contrary, the Court cannot find any basis for the plaintiff's claim that the defendant should have offered lump sum leave even when he himself only requested leave, if at all, on an intermittent basis. It seems a stretch to find that, by the plaintiff's words and actions, the defendant should have

been aware that the plaintiff was really making a request for 8 weeks of *unpaid* leave, *see* 29 U.S.C. § 2612(d), so that he could accommodate a scheduling conflict of a mere hours on Sundays.[2]

## II.     FMLA Retaliation

The plaintiff also claims that the defendant terminated his employment in retaliation for having inquired about the possibility of taking intermittent FMLA leave. (Pl. Dep. at 172.) The plaintiff has employed the burden-shifting analysis under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Yashenko v. Harrah's NC Casino*, 446 F.3d 541, 550-51 (4th Cir. 2006); *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 146-47 (3d Cir.2004). Under this framework, the plaintiff must first establish a *prima facie* case of retaliation. *Yashenko*, 446 F.3d at 551. If the plaintiff establishes a *prima facie* case, then the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the plaintiff's termination. *Id*. Once the defendant has offered a non-retaliatory explanation, the plaintiff bears the burden of establishing that such explanation is, in fact, pretext for unlawful FMLA retaliation. *Id*.; *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir. 2001).

---

[2]  The defendant has also raised the argument that any interference claim must be denied insofar as the plaintiff did not give timely notice of his need for such "foreseeable" leave. An employee must provide 30 days' notice of a need for FMLA leave if the need for leave is foreseeable. 29 C.F.R. § 825.302(a). This defense implicates the issue of whether the leave requested here was foreseeable. The plaintiff seems to confess that it was. (Pl. Resp. at 5.) Of course, the timing of the announcement of the change in work schedule, which required the plaintiff to work on Sundays, was arguably an unforeseeable event (although surely the plaintiff was acquainted with the seasonal busyness of that time of year) that would have absolved the plaintiff of the strict letter of the 30 day notice requirement. It seems possible that the better standard would be that the plaintiff was required to give leave as soon as practicable under the circumstances. *See Spraggins v. Knauf Fiber Glass GmbH, Inc.*, 401 F. Supp. 2d 1235, 1239-40 (M.D. Ala. 2005). The Court need not decide it, however. The plaintiff was not entitled to intermittent leave and the Court knows of no basis to find against the defendant for not offering lump sum leave, where lump sum leave was never requested, suggested, or otherwise implicated.

The plaintiff makes a paragraph of cursory remarks in response to the defendant's suggestion that he cannot establish a *prima facie* case.[3] The Court, however, need not decide it. Regardless of whether the plaintiff can make his initial showing of retaliation, he has made no effort to rebut the defendant's legitimate, non-retaliatory reason for termination. He makes no response in his brief whatsoever. (See Pl. Resp. at 4.) As discussed, the defendant has proffered a non-retaliatory basis for the plaintiff's termination: the plaintiff missed work three Sundays in a row. Two of those absences occurred prior to the plaintiff making any mention of intermittent leave. (Pl. Dep. at 68, 95, 119.) As discussed, even as the plaintiff began the processes of seeking FMLA leave, he was unequivocally expected at work on December 9. (Pl. Dep. at 101, 110 & Exh. 6; Cochran Dep. at 28; Morris Dep. at 22.) It is undisputed that he did not show and that he had not submitted any FMLA paperwork regarding intermittent leave. The record is clear that it was the defendant's peak season of operation and the plaintiff and others were needed on Sundays. (Pl. Dep. at 68-72, 74-75, 98-112.) The plaintiff was given multiple opportunities to make necessary arrangements. (See Morris Decl. ¶ 5; Cochran Decl. ¶ 11). The plaintiff has not come forward with any evidence that other management employees in the defendant's Spartanburg hub were permitted to repeatedly skip scheduled Sunday work. (Cf. Yarrell Decl. ¶ 3; Cochran Decl. ¶ 9).

As already considered above, his only explanation, to the extent he has made one in regards to his retaliation claim, is that the defendant had agreed to extend him intermittent leave at the time when he missed the third Sunday. But, the plaintiff's own testimony on this point betrays him. The plaintiff claims that Mr. Morris "said they granted

---

[3] To establish a *prima facie* case of retaliation under the FMLA, the plaintiff must demonstrate that: (1) he engaged in protected activity; (2) UPS took adverse action against him; and (3) that the adverse action was casually connected to his protected activity. *Yashenko*, 446 F.3d at 551.

intermittent FMLA." (Pl. Dep. at 119.) The Court need not repeat itself but to simply say that the fact that the defendant has granted intermittent leave in the past is no promise that it will do so in the future. The point seems plain. But, even if Morris' statement was more promissory than the Court, or even the plaintiff himself has conceded, the undersigned does not understand how the plaintiff can argue that this fact somehow excused him from the explicit expectation that he still be at work on December 9. Critically, the plaintiff admits that *if* he had reported to work on the third Sunday (even after his inquiry about the possibility of intermittent FMLA leave), his employment would not have been terminated. (Pl. Dep. at 181-82). In other words, he admits that the termination of his employment is related to absenteeism and not a request for intermittent leave.

The defendant has indicated that the plaintiff's employment was terminated for absences on three consecutive Sundays. The plaintiff has offered no evidence from which a jury could conclude that this explanation was pretextual and that his late and incomplete request for intermittent leave was the real reason.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is RECOMMENDED that the defendant's motion for summary judgment [Doc. 59], however, should be GRANTED and the plaintiff's claims dismissed *with prejudice*.

s/ Bruce H. Hendricks  
United States Magistrate Judge

December 15, 2009  
Greenville, South Carolina

13